## BARKER v. DEIGNAN.

1. The oft-repeated but not continuous use of water, covering an adjoining lot of land, for floating rafts and lumber to the trespasser's mill, does not constitute adverse possession of such lot of land.
2. If there were no indication of ownership except the presence of floating rafts, then the removal of the rafts broke the possession, and putting other rafts in afterwards was not a continuation of the first trespass.
3. Poles driven down in the water to fasten floating rafts to, did not constitute notice of adverse possession of the land.
4. The Circuit Judge having admitted in evidence an old plat to sustain the defence of paramount title, on condition that the grant itself should be afterwards produced, which was not done, he did not err in ruling out all testimony as to this plat.

Before PRESSLEY, J., Charleston, June, 1885.

This was an action by Theodore G. Barker against Charles Deignan, commenced in May, 1884, to recover a lot of land covered with water in the city of Charleston. The judge charged the jury as follows:

Where paper titles are admitted in evidence, I am bound to charge you as to their effect. I charge you that under those grants of 1857, produced, to Mr. Samuel G. Barker and his will, and the subsequent deed to Theo. G. Barker, trustee, that he has shown a complete chain of title to the land in dispute, and is entitled to recover it unless the defendant has broken down that evidence.

The first question is, has the defendant shown a paramount title in some one else, has he shown a paramount title in Cleland, or who may be entitled through him from his grant or supposed grant? I am bound to charge you that there is no Cleland grant before the court, and all that has been said about it must be ruled out. I admitted Mr. DeCaradeuc's testimony on condition that a Cleland grant should be produced and with the understanding that his testimony on that point must be ruled out if it was not produced. The law at that time was this: a party desiring a grant got a warrant of survey; under that warrant of survey he had the land surveyed, and of that land thus surveyed a plat was made. That plat thus made was to be certified by the surveyor general as surveyed off to him. After getting that if he did not choose to go further and have that plat certified to the governor, connected with a grant made out, to which the plat should be attached, and signed by the governor, his warrant of survey and the survey thereupon fell to the ground; the proof is in this case that he got a warrant of survey and that it was surveyed, and there the proof stops, and until he proves that he subsequently got a grant under seal of the State and signed by the governor, there is no grant proved before you, so there is no proof of paramount title under that grant.

I am requested by the plaintiff to charge you that *if* he had got a grant, it *was void*. I rule that that is the law. We are not to know but that it was the very discovery of that law which *is the reason why the grant is not here*. Under the law of 1784 if the survey had gone any further, it would have been *null and*

*void*, because he took more chains front than he took chains deep.
The object of the act was to prevent one or two men from absorb-
ing the whole of the river front.

Has the defendant proved title by adverse possession? Adverse
possession must be in such way as to give the party fair notice
that he is holding *under adverse* title.    Where a person is hold-
ing under paper title, a wharf, office, shop, &c., are evidence of
his title, to the extent of that paper title, but that possession was
not notice that he was holding any further.    When he took that
title in 1869, calling for Mr. Barker's land as one of the boun-
daries, that was an admission by him that up to that time he did
not claim that land by any adverse possession.    Did he after that
have ten years' adverse continuous possession ?    That is the law.
It must be adverse and it must be continuous.    What I mean by
continuous is this : a man squats on another man's land, and even
clears a few acres and builds a fence and cultivates it ; if he
removes the fence and carries it away before his possession of ten
years is complete, and abandons the cultivation of the field, all
his claim is gone; and if he comes back and commences a new
possession, his adverse possession commences from the new start.
You cannot link two, three, four, or five trespasses together to
make one adverse possession.    It must be continuous.    There
must be the same continuous possession from the time you do it
until your title is perfect in ten years.

Does the floating of a raft of timber which is put there for use
and moved as soon as used—does the doing that from time to
time, floating it in a place which the owner is not using, consti-
tute adverse continuous possession?    If, at any time, he moved
all those rafts away, that broke his possession.    If at any time
the premises were cleared, that broke his possession ; and his
putting rafts there six months after, or a year after, was not a
continuance of the first trespass, if that was the character of his
possession.    It must be ten years' continuous possession, and I
submit to you whether the putting of rafts, such as have been
proved in this case, was such adverse continuous possession as
would be fair notice to the owner that he was claiming that land.
If it was not, your verdict must be for the plaintiff.    You cannot
take into account the fence which the witnesses say was put there,

because that was not put there according to the evidence until 1881. He cannot rely on the fence as giving him ten years' adverse possession.

If the poles were put there simply for the purpose of fastening the rafts there occasionally, that would not constitute notice that he claimed the land. It must be such possession as claims the right to exclude the owner, and it must be continuous. Unless, therefore, you are satisfied from the testimony that the defendant has had ten years' adverse continuous possession of this land in dispute, as I charge you no paramount title is proved in the defendant or any one else, your verdict must be for the plaintiff for the land in dispute ; but if you believe that he has had ten years' adverse continuous possession of that land, you will give him a verdict for so much of the land as he had possession of, if you can find that out. As there is no color of title with reference to this land, on proof that he had ten years' continuous adverse possession, you can only give him a verdict for so much as his timber actually covered, if you so find that there was any portion of it continuously covered by timber.

*Mr. A. G. Magrath*, for appellant.

*Mr. C. H. Simonton*, contra.

July 14, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In the action below the plaintiff, respondent, sought to recover damages from the defendant, appellant, for an alleged trespass upon plaintiff's land, of which plaintiff, in his complaint, claims ownership, and upon which he alleged that defendant had wrongfully entered, dug up the ground, and otherwise injured the premises, to the damage of the plaintiff one thousand dollars. The defendant denied each and every allegation in the complaint. The case was tried by jury, his honor, Judge Pressley, presiding, and.a verdict was rendered for the plaintiff. There were no requests to charge from either side, but the defendant appeals from certain portions of the charge which the presiding judge delivered to the jury.

The defendant on the trial attempted to prove paramount title,

and also adverse possession, to overthrow plaintiff's title, which
was complete unless overthrown by one or other of these defences.
In the defence of paramount title the defendant relied upon a
grant to one Cleland, and before the production of this grant
certain testimony was introduced in reference thereto, upon con-
dition that the grant should be produced afterwards. This grant
was never produced, and the judge in his charge ruled out all of
the testimony which had been received in reference thereto. And
the exception as to that matter is as follows: "Exception 6th.
Because his honor charged the jury adversely to the defendant in
regard to the Cleland grant, when he had excluded all questions
as to that grant, and specially had excluded the decrees of this
court in cases where the validity of that grant had been estab-
lished." [1]

The foundation for the other exceptions was, what the judge
said in reference to the defence of adverse possession. It appears
that defendant was in possession of a small lot of land on Var-
dell's Creek and Town Creek, waters of Cooper River, upon
which he had a mill. This property had been purchased from the
plaintiff's ancestor, S. G. Barker, and called for other lands of
the said S. G. Barker as its southern boundary in the deed of
conveyance; and it seems that the defendant made use of these
adjoining lots near his mill, which were water lots not built upon,
to float his saw logs and rafts of timber, and in which certain
poles were put up for keeping the rafts in. And the question of
adverse possession turned upon the testimony in reference to the
use made of said lots.

His honor charged in substance, that to give title by such pos-
session, it must be adverse and continuous, and of such character
as to give the opposite party fair notice that the possession is
held adversely; and by way of illustration of what he meant by
the term "continuous," he said: "If a man squats on another
man's land, and even clears a few acres and builds a fence and
cultivates it; if he removes the fence and carries it away before
his possession of ten years is complete, and abandons the cultiva-
tion of the field, all his claim is gone; and if he comes back and
commences a new possession, his adverse possession commences

---

[1] These were suits between other parties.—REPORTER.

from the new start.  You cannot link two, three, four, or five trespasses together to make one adverse possession.  It must be continuous.  There must be the same continuous possession from the time you do it until your title is perfect in ten years.  Does the floating of a raft of timber, which is put there for use and moved as soon as used—does the doing that from time to time, floating it in a place which the owner is not using, constitute adverse continuous possession ?  If at any time he moved all these rafts away, that broke the possession.  If at any time the premises were cleared, that broke the possession, and his floating rafts there six months after, or a year after, was not a continu-' ance of the first trespass, if that was the character of his posses- sion.  It must be ten years' continuous possession, and I submit to you whether the floating rafts, such as has been proved in this case, was such adverse continuous possession as would be fair notice to the owner that he was claiming the land.  If it was not, your verdict must be for the plaintiff.  *  *  *  But if you believe that the defendant has been in the adverse continu- ous possession of the land for ten years, you will give him a verdict for so much of the land as he has had possession of, if you can find it."

The exceptions of appellant to this charge which raise ques- tions of law are as follows :

1st.  That his honor erred when, to illustrate his idea of ad- verse possession, he said : "If at any time the (defendant) moved all those rafts away, that he broke his possession."  And again : "If at any time the premises were cleared, that broke his posses- sion."  The effect of which was to impress the jury with the belief that there could be no right acquired by adverse possession, where the adverse right was claimed by the use of land for keep- ing lumber used in the business of a shipbuilder, if that lumber was used for the purpose for which it was kept on the land.

2nd.  That his honor erred when he said to the jury, that if at any time he, the defendant, moved all those rafts away, that broke his possession, and led to the conclusion that, however short the interval of time between the use of one raft and replacing it by another, a new start for the adverse possession commenced with each successive raft of timber.

3d. Because his honor erred when he said to the jury that, "If the poles were put there simply for the purpose of fastening the rafts there occasionally, that would not constitute notice that he claimed the land," when by this instruction the jury were led to accept this as the construction by the judge of the testimony, and such construction was not that which the testimony required.

The other exceptions raise no questions, but are rather in the nature of allegations as to what had been proved and what the defendant claimed.

It will be observed that the general proposition of law laid down by the Circuit Judge as to adverse possession, to wit, that it must be continuous, adverse, and of such character as to give notice to the true owner, is not contested in the appeal. We assume, then, that proposition to be the law of the case. The appellant, however, complains in his first ground above of the manner in which the judge illustrated his idea of "continuous" possession. When the charge is read as a whole, as it was delivered to the jury, it will be seen that the judge endeavored to draw a distinction between repeated trespasses and a constant holding after having once taken possession, with the view to impress upon the minds of the jury the principle upon which the one would not give title and the other would. There was certainly no error in pointing out this difference, because, while it is admitted that continuous, adverse, and notorious possession for ten years will ordinarily give title, yet it is equally certain that no number of sporadic trespasses will have that effect.

The *locus* claimed by the defendant by his adverse possession was a peculiar one. It seems to have been covered mostly by water, and the surface was not used at any definite spot continuously to float timber for the use of the mill near by, and as the defendant presented no color of title, his claim was necessarily confined to his *pedis possessio.* Where that was, it was no doubt difficult to tell; hence the pertinency of the judge's charge where he said to the jury, "But if you believe that he (defendant) has had ten years' continuous adverse possession of that land, you will give a verdict for so much of the land as he had possession of, *if you can find that out.*" It being the purpose of the judge to point out the difference between repeated acts of trespass and actual con-

tinued possession, and how possession might be broken, we do
not think that the language used by him, and objected to, was
calculated to mislead the jury, as stated in the exception; espe-
cially as he submitted it to the jury to determine whether the
possession was continuous or in the nature of repeated trespasses.

What is said above applies also to the second exception. The
judge said: "If at any time the premises were cleared, that broke
the possession." That is, if there was no other indication of
ownership or possession except the presence of floating rafts,
when all these were cleared away, all evidence was gone, and the
possession broken. But the judge went on to say, with the view
to point out clearly the difference between repeated acts of tres-
pass and a constant holding for use, that after the lot was thus
cleared, the defendant putting rafts back there six months after,
or a year after, was not a continuance of the first trespass; and
upon the whole he left it to the jury to say whether the posses-
sion of the defendant was a holding for constant use by him, or
whether the lot was used just as occasion and his necessities
required, each use thereof being a separate trespass.

The third exception objects to what the judge said in reference
to the poles, on the ground that the jury might have been led
thereby to the conclusion that the poles were put there simply
for the purpose of fastening the rafts, and if so, that would not
constitute notice. We do not see that this followed, or was pro-
bable from the judge's remark. He said: "If the poles were put
there simply to fasten the rafts, that would not constitute notice
that he claimed the land;" but whether they were put there for
that purpose or not, the judge did not intimate. He left that to
the jury.

No error has been pointed out to us in the argument growing
out of what the judge said in reference to the Cleland grant (6th
exception). The other exceptions contain allegations of facts
claimed to have been proved on the trial. This being a jury
case, the facts were for them.

It is the judgment of this court, that the judgment of the Cir-
cuit Court be affirmed.